PETITION OF DENNIS M. WETZEL.

No. 11413.
Decided January 29, 1968.
437 P.2d 7.

488

Pro se through a next of friend.

PER CURIAM:

Original proceeding. Petition for writ of habeas corpus filed by Dennis M. Wetzel, an inmate of the Montana State Prison, appearing "pro se through a next of friend."

Before we proceed to a discussion of the issues raised by petitioner, it should be noted that petitioner submitted his contentions to the Montana Defender Project and they were given consideration by them. While the matter was in the hands of the Montana Defender Project, and on October 31, 1966, petitioner wrote to that agency and withdrew his case, advising that he could not agree with the two project personnel assigned to his case because they felt his case deserved attention only as to two contentions while petitioner insists on five contentions. Petitioner requested his records to be returned to him and advised that he would proceed to prepare his own petition and brief and would not request the assistance of counsel.

Petitioner raises the following issues: (1) that he was subjected to psychological coercion in violation of the due process clause of the 14th Amendment to the United States Constitution; (2) that he did not have the assistance of counsel as provided in the 6th Amendment to the United States Constitution; (3) that he has twice been placed in jeopardy which is prohibited by the 5th Amendment to the United States Constitu-

tion; (4) that he did not receive a speedy trial as required by the 6th Amendment to the United States Constitution; (5) that the court lost jurisdiction over the charge for which he was convicted and thereby petitioner did not receive due process under the 14th Amendment to the United States Constitution; and (6) that when petitioner was sentenced upon a charge of "violating the terms of a suspended imposition of sentence" he was deprived of due process of law as guaranteed by the 14th Amendment to the United States Constitution.

A brief review of the fact situation, as disclosed by the petition, is that petitioner was arrested in Great Falls, Montana, on or about May 6, 1964, charged with the crime of uttering and delivering a fraudulent check upon the Glass Art Shop, warrant issued by the Callahan justice court. Following his arrest petitioner states that a deputy county attorney made an agreement with him that if petitioner would sign a voluntary application, as an alcoholic, to take treatment at the State Hospital at Warm Springs, Montana, the charge would be dismissed; that petitioner agreed, signed the application and went to the hospital, where he was later found to be non-alcoholic and was released.

Petitioner further contends that at the time of his first arrest, he had written another check upon Cascade Camera on the same day for the same amount of money, cashed the same day, bearing the same signature, and that petitioner had been assured that both checks would be combined in the charge respecting the Glass Art Shop check.

That on or about August 16, 1964, while confined in the Salt Lake County jail in Salt Lake City, Utah, charged with the crime of embezzlement of personal property in excess of $50 he was informed that a detainer had been filed from Great Falls charging him with being a fugitive from justice for the crime of passing a fictitious check upon Cascade Camera. On the fugitive charge he appeared before the city court of Salt Lake City and counsel was appointed for him by the court. He was

later released from custody and the fugitive charge was thereafter dismissed in the city court of Salt Lake City. Petitioner states that when he was released from jail he was told that the county attorney of Great Falls did not wish to prosecute and that the Montana charge had been dismissed. This, however, was not true since petitioner returned to Great Falls and on or about October 30, 1964, he was arrested for the crime of passing a fictitious check.

That following his arrest, his father retained counsel to represent petitioner and such counsel desired that petitioner go to the state hospital for observation but petitioner refused; however, according to petitioner, his counsel informed him that if he went to the hospital his counsel would have the charge dismissed and petitioner then agreed to go to the hospital on a voluntary application as an alcoholic. At the state hospital petitioner was informed he was not alcoholic but that he needed treatment for some type of mental disorder, but upon being informed of the form of treatment necessary petitioner refused any type of treatment and requested dismissal from the hospital. He was so dismissed and returned to the Cascade County jail on December 3, 1964, where he was informed that the criminal charge had not been dismissed.

Petitioner further alleges that on or about December 8, 1964, he advised the sheriff of Cascade County that he would not plead guilty to a felony as charged but would plead guilty to a lesser charge of misdemeanor. This offer was relayed to the county attorney's office and petitioner was advised that no agreement of that type would be accepted; that only two avenues were open upon a plea of guilty, (1) three years in the Montana State Prison, or (2) six months in the county jail plus a five-year delay of imposition of sentence. Petitioner states that for various reasons he agreed to the second choice and was taken to court.

That some time after arriving in the court room the partner of his counsel appeared, petitioner entered a plea of guilty and

was sentenced to a term of six months in the county jail, plus a five-year suspended imposition of sentence.

Thereafter he was made a trusty in the county jail and after approximately two months he was hired as a paid cook at the jail and he was released from jail during the day to run an auto reconditioning shop. However, on April 25, 1965, he was arrested and charged with the crime of burglary. On or about April 30, 1965, petitioner was informed that the burglary charge had been dismissed, and he was then charged with violating the terms of his suspended imposition of sentence.

On May 17, 1965, a hearing was had in the district court with reference to the violation and after hearing arguments by both defense and prosecution counsel petitioner was sentenced to a term of five years in the Montana State Prison.

Turning now to the first issue raised, that petitioner was subjected to psychological coercion. Petitioner states in his brief that when he was released from the state hospital on or about May 22, 1964, he felt he was free and that the charge had been dismissed. He then goes on to recite that approximately two months later, on or about August 1, 1964, he was arrested at Tacoma, Washington, and held for extradition to Salt Lake City, Utah; that upon arrival there he was informed of the charges against him, they being: (1) suspicion of forgery; (2) suspicion of insufficient fund checks; (3) embezzlement; (4) that he was being investigated by federal authorities for possible violation of the Dyer Act; and (5) he received word of the detainer from Great Falls on the fictitious check charge. Petitioner states that he spent approximately 100 days in the Salt Lake County jail, that throughout this time he was in constant fear, he could not eat properly and lost weight. He was dismissed from the Salt Lake County jail on or about October 16, 1964.

While petitioner argues that the Montana authorities were in some manner responsible for his long incarceration in Salt Lake the exhibits submitted by petitioner indicate that the

complaint entitled the State of Utah v. Dennis Wetzel charging him with embezzlement in Salt Lake County, Utah, was executed on August 6, 1964, and filed in the city court of Salt Lake City on August 7, 1964. The complaint charging petitioner with being a fugitive from justice from the State of Montana was executed on October 1, 1964, warrant of arrest issued the same day, and petitioner was present in court on October 2, 1964, when counsel was appointed to represent him and the case was dismissed on November 2, 1964, but petitioner had been previously released from the jail on or about October 16, 1964, so the actual incarceration on this charge was 14 days if he was not confined by reason of any of the other charges arising in the State of Utah.

Thereafter, petitioner went back to Great Falls where he was again arrested on October 30, 1964, on the Cascade Camera check charge. Petitioner argues that the two checks, the Glass Art Shop and the Cascade Camera were combined from the start; that he went to the state hospital on both charges and he was released on both charges. The record, however, does not bear out his contentions. We fail to observe any merit in petitioner's first contention.

As to the second issue, that of ineffective counsel, it appears that petitioner's father hired his counsel and according to petitioner such counsel agreed to (1) attempt to disqualify the district judge because he felt the judge was prejudiced toward him, and (2) attempt to have the bond reduced; that such were the sole reasons that counsel was retained. This court is somewhat familiar with the duties and responsibilities of retained counsel in criminal matters, and while they should give every consideration to the desires of their client, they are governed by the law, are officers of the courts and as such must observe the guide lines provided, whether such guide lines meet with the approval of their client or not. For one unfamiliar with the practice, procedure and law to attempt to direct the activities of his counsel is ridiculous. While peti-

tioner admits his father retained counsel for him, in his brief he comments about it in these words: "* * * and whatever petitioner's father requested of the attorney cannot enter into the controversy; petitioner was the defendant, not his father."

About all there is to this contention is that petitioner is now dissatisfied with his situation and blames it on his counsel. From his own allegations it is apparent that counsel were present and doing what they could for petitioner during his appearances before the court.

It should be noted also that petitioner disagreed with his retained counsel who requested that he be relieved as defense counsel, and the court appointed another counsel to represent him. This was with the consent of petitioner and such appointed counsel represented petitioner at the revocation hearing on May 17, 1965.

The third issue is that petitioner has been placed twice in jeopardy.

Petitioner was given a five-year suspended imposition of sentence and the order provides "That defendant as a condition to the suspended imposition of sentence is to spend six (6) months in the Cascade County jail commencing immediately and further that he shall receive such psychiatric treatment as his parents afford."

Examination of the transcript at the time of the entry of the guilty plea discloses that the Judge stated: "* * * when you are released from the county jail that will not mean you have served one day * * *." Petitioner argues that the six-months county jail sentence is a separate and distinct punishment in that it was a punishment starting immediately after sentence; a punishment of being in jail; that on the other hand the five-year suspended imposition of sentence calls for an altogether different type of punishment and observance of the rules and regulations set down by the Montana Board of Pardons.

The quoted statement by the court which petitioner uses as a basis for his argument was correct. The deferred imposition

of sentence was for a period of five years and conditioned upon petitioner spending six months in the county jail. This was an effort by the court to bring about the rehabilitation of the petitioner. The court at the time petitioner was sentenced stated that since the time petitioner was a juvenile the court had known he had a problem, that he was mentally responsible, emotionally unstable, unable to stay out of trouble. The court also stated that arrangements would be made with the jailer so that a psychiatrist could see petitioner or, if necessary he could be taken to a psychiatrist's office. The entire record of petitioner discloses effort after effort to assist him in his rehabilitation, none of which were ever appreciated since petitioner constantly violated the trust placed in him.

This court discussed the matter of deferred imposition of sentence in Petition of Williams, 145 Mont. 45, 399 P.2d 732, and held that double jeopardy does not exist in this type of proceeding. In that case the court provided for "jail based" custody of the defendant, permitting him to be employed during working hours. Much the same situation eventually arose with petitioner here in that he was permitted to depart from the jail for purposes of employment, and it was during such a departure that he was arrested and therefore charged with violation of his probation in the following particulars: (1) that he was released from the jail for work purposes and was not working; (2) that he was associating with a person with a felony record and bad moral character; (3) that he had issued an insufficient funds check for $10; and (4) that he had issued an insufficient funds check for $25. At the time of the revocation hearing, the court found these charges to be true.

Indicative of the attitude of petitioner is the testimony of the district parole and probation supervisor who testified that he interviewed petitioner in the county jail on January 6, 1965, following his sentence. At that time he read the rules and regulations of parole and probation out loud to petitioner, asking

him to read them along with him. He pointed out the provisions of the court order and discussed the provisions of the deferred sentence. He later prepared a memorandum for petitioner which outlined the conditions of his work release program. He noted various apparent violations of the probation and discussed them with petitioner and on one occasion at the county jail petitioner informed him that he was to meet his wife at five o'clock at the bank for the purpose of opening a checking account. The officer informed petitioner that he did not want him to open a checking account because of his previous difficulty with checks but petitioner opened it regardless, with dual signature requirements, his and his wife.

The Supreme Court of the United States on November 13, 1967, handed down its opinion in Mempa v. Rhay and Walkling v. Washington State Board of Prison Terms and Paroles, 389 U.S. 128, 88 S.Ct. 254, 19 L.Ed.2d 336. Both of these cases involved the absence of counsel for each petitioner at the time a revocation hearing was held, and it covers the question of the extent of the right to counsel at the time of sentencing where the sentencing has been deferred subject to probation. Both causes were reversed because counsel were not presnt, but such is not the case here. The purpose of mentioning these cases is the comment by the author of the unanimous opinion, where he stated "In sum, we do not question the authority of the State of Washington to provide for a deferred sentencing procedure coupled with its probation provisions. Indeed, it appears to be an enlightened step forward. All we decide here is that a lawyer must be afforded at this proceeding whether it be labeled a revocation of probation or a deferred sentencing. We assume that counsel appointed for the purpose of the trial or guilty plea would not be unduly burdened by being requested to follow through at the deferred sentencing stage of the proceeding."

The fourth contention is that petitioner was not granted a speedy trial. As a basis for this argument petitioner

496

associates the two fraudulent checks, the Glass Art Shop check and the Cascade Camera check, but other than the allegation which petitioner makes in this regard there is nothing in the record to substantiate this claim. So far as the record is concerned petitioner was arrested on the Cascade Camera check on October 30, 1964. He went voluntarily over to the state hospital, returned to the jail on December 3, 1964, and entered his plea on December 8, 1964. There obviously has been no delay so this contention is without merit.

The fifth contention is that the court lost jurisdiction over the charge on which he was convicted. Petitioner here calls attention to the various arrests and releases as supporting this contention. While he argues that neither the county attorney's office nor the court can drop and restore charges at whim, yet it is clear from his own statements that when he was first in custody in May of 1964 he was permitted to make a voluntary application to the state hospital and thereafter he was released and no further effort was made to prosecute him for the Glass Art Shop check. While petitioner refers to his arrest in Salt Lake City, it is clear from the record that the detainer charge placed against him was long after he was in custody upon charges arising in the State of Utah and the record shows the complaint charging him with being a fugitive from justice was executed in Utah, not in Montana. Following his return to Montana, petitioner was arrested on or about October 30, 1964, on the Cascade Camera check charge, once again voluntarily went to the state hospital, but was on this occasion returned to the Cascade County jail and shortly thereafter entered his plea. By reason of the fact that the authorities twice permitted petitioner to go to the state hospital for treatment it would seem that they were endeavoring to the best of their ability to assist petitioner in his troubles.

Petitioner's sixth contention has to do with the violation of the terms of a suspended imposition of sentence. Petitioner alleges that at the time he was found guilty of such

violation he was still serving time on the six months jail sentence and had not begun the five-year suspended imposition of sentence which did not come into effect until on or about June 8, 1965.

The order for deferred imposition of sentence in part reads:

"Now, Therefore, It Is Ordered as follows: That the pronouncement of judgment and sentence be deferred and arrested for a period of Five (5) years *from date hereof* * * *." (Emphasis ours.)

The order is dated December 8, 1964. There is no merit to petitioner's argument as to this feature since the deferment commenced December 8, 1964.

The other matters suggested by petitioner were dealt with under the third contention.

The writ is denied and the proceeding ordered dismissed.